COMMONWEALTH vs. MANUEL PIMENTEL.

No. 88-P-237.

Essex.   December 16, 1988. — July 17, 1989.

Present: PERRETTA, SMITH, & WARNER, JJ.

*Threshold Police Inquiry. Search and Seizure*, Threshold police inquiry. *Constitutional Law*, Search and seizure.

A person (defendant), approached by three police officers prior to dropping a plastic bag containing a quantity of cocaine on a sidewalk, was not "seized" within the meaning of the Fourth Amendment to the United States Constitution, where the officers did not engage in any "show of authority" which would have caused a reasonable person to feel that he was not free to walk away, and where, although the defendant knew one of the officers because of previous drug activities, there was nothing to show that the officers had harassed the defendant in the past and thereby provoked or maneuvered him into dropping the bag. [559-562]

INDICTMENT found and returned in the Superior Court Department on June 17, 1987.

A motion to suppress evidence was heard by *Cortland A. Mathers*, J.

*Margaret J. Perry*, Assistant District Attorney, for the Commonwealth.

*Jose A. Espinosa* for the defendant.

PERRETTA, J. Following an evidentiary hearing, a Superior Court judge granted the defendant's motion to suppress as evidence cocaine in a plastic bag dropped to the sidewalk by the defendant upon the approach of three police officers, one of whom testified at the hearing. The officer stated that he was going to make a threshold inquiry of the defendant because he suspected that a "drug deal had taken place." Based upon the officers' testimony and *Commonwealth* v. *Silva*, 366 Mass. 402, 405 (1974), the judge concluded that the officers had acted on a "hunch" rather than a reasonable suspicion and

granted the motion.[1] On the facts found by the judge, we conclude that because the officers' course of action did not constitute a stop or a seizure of the defendant, the motion to suppress should have been denied. We reverse the order.

I. *The Evidence*.

About 8:30 P.M., March 10, 1987, State Trooper Richard L. Fraelick, who had extensive experience in narcotics investigations, was driving an unmarked vehicle in Lawrence. His partner, Trooper Chester Bishop, and a detective from the Methuen police department, identified at the suppression hearing only as Fram, were with him. They were on Newbury Street driving toward the Essex Street intersection. Because of the many restaurants and clubs in the area, including the 101 Lounge, the lighting was very good. Fraelick was familiar with this section of the city and knew it to be one of drug activity. Within three months of the night in issue, he had made four drug-related arrests in that area, and his duties as a narcotics officer had required him to be in the 101 Lounge on several occasions.

As Fraelick drove toward the 101 Lounge, he saw a pick-up truck bearing New Hampshire plates parked along the curb. There was a man in the driver's seat and another male, the defendant, stepping down from the passenger door of the truck to the sidewalk. He had a bundle of clothes and a small puppy in his arms. Fraelick was now almost alongside the truck. He looked at the defendant standing on the sidewalk just as he (the defendant) looked up at him. There was instant mutual recognition, and the defendant made some sort of motion with his left hand.

Fraelick and the defendant recognized each other because the defendant had been arrested in the past for drug offenses. Further, Fraelick had searched the defendant's apartment and

---

[1] The judge also suppressed $2,171.00 in currency and a business card upon which names and numbers had been written. These items were taken from the defendant after his arrest and at the time of his booking. The admissibility of these articles as well as the cocaine turns on the same issue, whether the initial encounter by the police with the defendant constituted a stop.

had found currency, scales, baggies, other drug paraphernalia, and a large quantity of cocaine.

As soon as Fraelick saw the defendant and his somewhat obscure hand movement, he said to Bishop and Fram, "There's Manny. He's starting to draw up something." He immediately stopped the vehicle parallel to the truck and got out from the driver's door while Bishop and Fram got out on the passenger side.

In no more than a matter of seconds, the following events happened. Bishop and Fram walked to the back and around the rear of the truck; Fraelick walked to and around the front. As he turned by the right front bumper of the truck, he saw that the defendant was about seven to eight feet away. He was standing with his back to Fraelick, watching Bishop and Fram walking up to him. Apparently unaware of Fraelick's presence, the defendant brought his hand from around front to behind his back and let drop a clear plastic bag. Now moving quickly, Fraelick came forward and placed his foot over the bag.

Bishop and Fram then ordered the defendant to stand against the side of the truck. Fraelick retrieved the bag from the sidewalk and saw that the bag contained a white powder which he believed to be cocaine.

II. *The Encounter.*

In allowing the motion to suppress, the judge concluded that the circumstances described by Fraelick did not give rise to a reasonable suspicion that the defendant had committed a crime and, therefore, that he could not be briefly detained for purposes of a threshold inquiry.[2] See *Terry* v. *Ohio*, 392 U.S. 1 (1968); *Commonwealth* v. *Silva*, 366 Mass. at 405. We need not consider, however, whether, on the facts found by the judge, the police acted on a hunch or on reasonable suspicion.

"If there was no seizure, the police activity in questioning the defendant did not violate the defendant's constitutional rights. If, however, there was a seizure not justified by reason-

---

[2] As explained by Fraelick at the hearing on the motion, he suspected that a drug deal had just taken place because the defendant, who was known to possess and deal in drugs, was stepping down from a truck from New Hampshire parked in a known high drug-crime section of the city.

able and articulable suspicion, the illegality of the seizure may render inadmissible the evidence obtained." *Commonwealth v. Sanchez*, 403 Mass. 640, 643 (1988). See also *Immigration & Naturalization Serv.* v. *Delgado*, 466 U.S. 210, 216 (1984); *United States* v. *West*, 651 F.2d 71, 73 (1st Cir. 1981), vacated on other grounds, 463 U.S. 1201 (1983), cert. denied, 469 U.S. 1188 (1985). The pivotal question, therefore, is whether the police stopped or seized the defendant before he dropped his drugs.

Not every encounter between an officer and a citizen constitutes a stop or seizure. Whether the defendant was stopped or seized depends upon the circumstances of the encounter. "An objective standard is used to determine when a seizure has occurred: 'a person has been "seized" . . . if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Commonwealth* v. *Borges*, 395 Mass. 788, 791 (1985), quoting from *United States* v. *Mendenhall*, 446 U.S. 544, 554 (1980). See also, cases and authorities collected and discussed in *Borges*, at 792-793 n.3.

Because the average citizen questioned by the police does not necessarily feel free to walk away without responding in some manner, we look to circumstances beyond the show of governmental authority inherent in the mere presence of the police. See *Terry* v. *Ohio*, 392 U.S. at 19 n.16; *United States* v. *Mendenhall*, 446 U.S. at 553. See also 3 W. LaFave, Search and Seizure § 9.2(h), at 412 (2d ed. 1987). "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. See *Terry* v. *Ohio*, *supra* at 19, n.16; *Dunaway* v. *New York*, 442 U.S. 200, 207, and n.6 [1979]; 3 LaFave, Search and Seizure 53-55 (1978). In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." *United States* v. *Mendenhall*, 446 U.S. at 554-555.

On the facts found by the judge, we see nothing in the officers' conduct from which it could be concluded that they engaged in a "show of authority," *Commonwealth* v. *Sanchez*, 403 Mass. at 644, which would cause a reasonable person to feel that he was not free to walk away. Although we think that the number of officers involved in an encounter could be great enough that their mere presence might reasonably be viewed as threatening, we do not think that three (rather than two as in *Mendenhall*, *West*, and *Sanchez*, *supra*) is impressive or overwhelming. Nor do we think it especially significant that, upon seeing the defendant, Fraelick "slammed on his brakes." See *Michigan* v. *Chesternut*, 486 U.S. 567 (1988) (four officers in a cruiser accelerate to catch up to defendant who started to run upon seeing them). The officers did not block the truck (even assuming that the defendant, who had just stepped down from the truck, wished to get in), nor did they surround or otherwise impede his ability to walk away. They issued no command to or request of the defendant in the seconds between their approach of him and his dropping of the bag.

Further, although the defendant knew Fraelick because of his previous drug activities, there is nothing to show that the police had harassed the defendant in the past and thereby provoked or maneuvered him into dropping the bag. See *Commonwealth* v. *Wooden*, 13 Mass. App. Ct. 417, 420 (1982). Compare *State* v. *Belton*, 441 So.2d 1195, 1200 (La. 1983) (Dixon, C.J., dissenting, who observes that the defendant's flight into a bar upon seeing police did not give rise to a reasonable suspicion of criminal conduct where police had recently warned that they would arrest him the next time they saw him at that bar). Cf. *Commonwealth* v. *Thibeau*, 384 Mass. 762, 764 (1981). See generally 1 W. LaFave, Search and Seizure § 2.6(b), at 472-475 (2d ed. 1987).

Considering the totality of the circumstances, we conclude that the police did not stop or seize the defendant and, therefore, that his rights under the Fourth Amendment to the United States Constitution were not at issue when he dropped the bag of cocaine. See *Michigan* v. *Chesternut*, 486 U.S. at 574-576; *Commonwealth* v. *Sanchez*, 403 Mass. at 641-642; *Com-*

*monwealth* v. *Wooden*, 13 Mass. App. Ct. at 419-420. Compare *Commonwealth* v. *Bottari*, 395 Mass. 777, 780-782 (1985); *Commonwealth* v. *Borges*, 395 Mass. at 789-790; *Commonwealth* v. *Gutierrez*, 26 Mass. App. Ct. 42, 44-45 (1988). Once the defendant dropped the bag, without any prompting or wrongdoing by the police, Fraelick was free to retrieve it. See *Commonwealth* v. *Battle*, 365 Mass. 472, 475-476 & n.4 (1974). The defendant made no argument in the Superior Court or before us concerning the legality of his arrest and subsequent search (see, e.g., *Commonwealth* v. *Wilson*, 389 Mass. 115, 116-117 [1983]; see note 1, *supra*) other than as related to Fraelick's retrieval of the plastic bag.

*Order granting motion to suppress*
*reversed.*