COMMONWEALTH *vs.* MIGUEL LAUREANO, JR.

Essex. November 5, 1991. - January 23, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Search and Seizure,* Probable cause, Threshold police inquiry. *Constitutional Law,* Search and seizure.

Evidence at the hearing on a suppression motion, showing that the defendant, prior to police detectives' speaking with him or displaying any indicia of authority, walked to a public men's room in a bar, that the detectives followed, and that, once in the men's room, the detectives saw in plain view a bag of white powder in a urinal within arm's length of the defendant, who was standing by, but not using, the urinal established that the detectives had probable cause to arrest the defendant and that their seizure of the bag, which was found to contain cocaine, was proper. [709-711]

COMPLAINT received and sworn to in the Haverhill Division of the District Court Department on February 5, 1990.

A pretrial motion to suppress evidence was heard by *Norman Brisson,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Nolan,* J., in the Supreme Judicial Court for the county of Suffolk and the appeal was reported by him to the Appeals Court. The Supreme Judicial Court on its own initiative transferred the matter from the Appeals Court.

*William J. Meade,* Assistant District Attorney, for the Commonwealth.

*Matthew T. Gilbertson* for the defendant.

LYNCH, J. The defendant was charged with possession of a Class B controlled substance in violation of G. L. c. 94C, § 34 (1990 ed.). The District Court judge allowed the defendant's motion to suppress the evidence, relying on *Com-*

*monwealth* v. *Thibeau*, 384 Mass. 762 (1981). A single justice of this court granted the Commonwealth's motion for an interlocutory appeal. Mass. R. Crim. P. 15 (b) (2), 378 Mass. 882 (1979). We transferred the appeal to this court on our own motion and now reverse the order suppressing the evidence.

At the motion hearing the judge heard the following testimony. The defendant was in a bar, conversing with someone. Two detectives, in plain clothes, entered the bar and stood side by side at the door. One made a visual sweep of the room, the other glanced at the defendant. The defendant, who was approximately thirty feet from the detectives, abruptly terminated his conversation and hastily moved toward the men's room, ten feet away. The detectives followed, arriving at the rest room less than three seconds after the defendant. The detectives observed the defendant near a urinal, but not using it. One detective looked into the urinal, saw a small bag of white powder, and retrieved it. The defendant spun around and started to leave the rest room, whereupon he was placed under arrest.

The defendant, relying on art. 14 of the Massachusetts Declaration of Rights, argues that the detectives "pursued" him into the men's room, displayed their authority, and unconstitutionally seized him and the cocaine.

He contends that this case is controlled by *Commonwealth* v. *Thibeau, supra.*[1] Even if we assume that *Thibeau* creates a more rigorous art. 14 standard than now exists under the Fourth Amendment to the United States Constitution, the defendant's cause is not advanced. There we held that the police pursuit, with siren blaring, of a bicyclist required some articulable facts leading to reasonable suspicion prior to the start of pursuit because in those circumstances, the stop (and seizure) began when the pursuit commenced. The claim of

---

[1]We do not reach the question whether the recent Supreme Court decision in *California* v. *Hodari D.*, 111 S. Ct. 1547 (1991), would require a different result under the Fourth Amendment to the United States Constitution, or whether art. 14 would afford the defendant greater protection in this regard.

police "pursuit" by the defendant, however, is not a talismanic formula for converting all police investigation into a stop and seizure. In *Thibeau* we confronted the question whether the defendant's flight from police pursuit could be considered as suspicious conduct justifying a threshold inquiry. We held that flight could not be so considered because "[p]ursuit that appears designed to effect a stop is no less intrusive than the stop itself." *Id.* at 764. In this case there was no evidence of pursuit in the sense that the term was used in *Thibeau.* The detectives merely followed the defendant into a public rest room where they both had a right to be. There was no attempt to restrain the defendant from leaving the bar nor was there any manifestation of authority by the police that the defendant could reasonably interpret as restraining his right to go into the men's room.

Not every encounter between law enforcement officers and citizens constitutes a stop or seizure. We have noted that "[a]n objective standard is used to determine when a seizure has occurred: 'a person has been "seized" . . . if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " *Commonwealth* v. *Borges,* 395 Mass. 788, 791 (1985), quoting *United States* v. *Mendenhall,* 446 U.S. 544, 554 (1980). The evidence in this case merely shows that the defendant, prior to the detectives' speaking with him or displaying any indicia of authority, walked to the men's room and the detectives followed. Obviously detectives, even on active duty, are permitted to use a public men's room.

No evidence was presented from which the judge could have found there was a show of authority by the police prior to their entry of the men's room. Once in the public men's room, the detectives saw in plain view a bag of white powder within arm's length of the defendant, who was standing by, but not using, the urinal. At that point the detectives had probable cause to arrest the defendant.

*Order suppressing*
*evidence reversed.*