COMMONWEALTH vs. LINDY O. WEDDERBURN.

No. 93-P-1241.

Hampden. March 7, 1994. - May 27, 1994.

Present: PERRETTA, FINE, & GILLERMAN, JJ.

*Search and Seizure*, Threshold police inquiry, Probable cause. *Constitutional Law*, Search and seizure. *Arrest. Probable Cause. Controlled Substances.*

In circumstances where police merely approached the defendant there was no stop or seizure at that time; where the defendant, walking away dropped what "appeared to be a plastic bag," abandoning it, the police were free to seize the item and, when it was determined to contain cocaine, to use the evidence against the defendant at trial. [560-561, 564]
Where police officers had no probable cause to effect an arrest of the defendant, evidence (cocaine) seized from the defendant's person after the arrest was correctly ordered suppressed by the judge. [561-564]

INDICTMENT found and returned in the Superior Court Department on May 2, 1991.

A pretrial motion to suppress evidence was heard by *Richard F. Connon*, J.

An application for an interlocutory appeal was allowed by *Francis P. O'Connor*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*David P. Hoose* for the defendant.

*Marcia B. Julian*, Assistant District Attorney, for the Commonwealth.

GILLERMAN, J. The Commonwealth appeals from the allowance of the defendant's motion to suppress contraband he dropped on the sidewalk and additional contraband which was seized from the defendant's person. We take the facts from the judge's findings following a hearing on the motion to suppress, adding those that are not in dispute, and elimi-

nating those that, from our reading of the transcript, are clearly erroneous.[1]

At about 11:30 A.M. on March 18, 1990, two Springfield police officers were in an unmarked cruiser operating in the vicinity of College and Shattuck Streets. While at the stop sign at the intersection of these two streets, one of the officers saw the defendant and another person standing on the sidewalk on College Street. As the cruiser began to turn the corner toward College Street, the officer saw the defendant hand something to the other person, but the officer was unable to see what it was. The officer turned the cruiser, proceeded across the opposing traffic lane at a forty-five degree angle, and drove toward the two men standing on College Street. The cruiser proceeded at a "normal pace" because the officers did not want the two persons "to become aware of our presence until I was sure of what was going on." See note 1, *supra*.

As the cruiser approached the curb, several things happened: the defendant, the judge found, "dropped something that appeared to be a plastic bag" and then began to walk away, and the officer recognized the other person as a man he had arrested several times in the past. We are not told the basis for any of the arrests. When the cruiser reached the curb, the officers quickly left their vehicle. The undisputed testimony of the officer (implied in the judge's findings) was that he "grabbed . . . [the defendant] by the arm," placed

---

[1]We *add* the undisputed facts that the officers were in plainclothes riding in an unmarked cruiser.

We *delete* the findings that there was an "intimidating rush" by the officers as they proceeded toward the defendant, and that their cruiser "darted across traffic" to approach the defendant. As noted in the text, the officer who was driving the cruiser (he was the Commonwealth's only witness at the suppression hearing) testified on cross-examination that he proceeded at a forty-five degree angle across the street; that "I was going to drive up at a normal pace. I didn't want to speed across the street where they would hear me. I didn't want them to become aware of our presence until I was sure of what was going on." When asked whether he had accelerated as he drove across the street, he answered, "no." On direct examination, the officer merely testified that "I drove towards them," after which "I stopped the car. . . ."

him in handcuffs, and then searched him; the other officer seized the other person. The search of the defendant produced what the officer described in his testimony as a "plastic bag." The other officer retrieved what had been dropped on the ground which turned out to be two bags containing a number of smaller bags. The defendant was then placed in the cruiser and driven to the station.

The judge found that a "stop" had occurred, see *Terry* v. *Ohio*, 392 U.S. 1 (1968), as the police drove their cruiser toward the defendant, and that the stop at that point was not supported by reasonable suspicion of criminal activity, citing *Commonwealth* v. *Thibeau*, 384 Mass. 762, 763-764 (1981). The judge's findings do not include a discussion of the actual seizure of the defendant after the police left their cruiser. He did find that "[t]wo packages of crack cocaine were found on the ground and another was found in the defendant's pocket."

After the packages were seized, they were sent to the University of Massachusetts for testing by a laboratory; the laboratory analysis showed 1.87 grams of cocaine. Thus the judge's findings that the packages found on the ground and in the defendant's pocket contained cocaine refer only to information learned *after* the seizure.

We agree with the Commonwealth that there was no stop of the defendant as the officer drove the unmarked cruiser across College Street. At that point, there was not even a "pursuit" of the defendant which might otherwise mark the beginning of a stop. See *Commonwealth* v. *Thibeau*, 384 Mass. at 764. The police, in plainclothes, were merely approaching the defendant without drawing attention to their purpose, as in *Commonwealth* v. *Laureano*, 411 Mass. 708, 709-710 (1992) ("Not every encounter between law enforcement officers and citizens constitutes a stop or seizure").

Nor was there any constructive seizure as the police drove the cruiser across College Street.[2] "[A] person has been

[2]We put to one side *California* v. *Hodari D.*, 499 U.S. 621 (1991), which held that seizure means the application of physical force, however slight, or submission to an officer's show of authority to restrain the per-

'seized' . . . if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Commonwealth* v. *Borges*, 395 Mass. 788, 791 (1985), quoting from *United States* v. *Mendenhall*, 446 U.S. 544, 554, (1980). Explaining further the objective test of *Mendenhall*, the court said, "[A] seizure can be found 'only where the police have engaged in some "show of authority" which could be expected to command compliance, beyond simply identifying themselves as police.' " *Commonwealth* v. *Sanchez*, 403 Mass. 640, 644 (1988), quoting from *United States* v. *West*, 651 F.2d 71, 73 (1st Cir. 1981).

Here the unmarked cruiser crossed College Street at a normal pace deliberately designed not to arouse the attention of the defendant until the officer "was sure of what was going on." The police, in plainclothes, did not give any command or order to the defendant such as might constitute a show of authority. Contrast *Commonwealth* v. *Houle*, 35 Mass. App. Ct. 474, 476 (1993). Indeed, the police had not yet even addressed the defendant before he began to walk away. There is no finding as to what prompted the defendant to walk away; it may have been his hunch that the unmarked automobile was a police cruiser. But whatever his motivation, it is clear that the defendant believed, as would any reasonable person, that he was entirely free to leave the scene as the unmarked cruiser headed for the curb. Thus there was neither a stop nor any seizure while the police were in their cruiser.

It can hardly be doubted that the defendant was seized physically, and arrested, after the police left their cruiser, caught up with the defendant, grabbed him, placed handcuffs on him, searched him, put him in the cruiser, and drove him to the station.[3] See *Commonwealth* v. *Bottari*, 395 Mass.

---

son's liberty, as unnecessary to this opinion. See *Commonwealth* v. *Harkess*, 35 Mass. App. Ct. 626, 628-629 (1993).

[3]The defendant's suppression motion complains of a search and seizure that was conducted without a warrant or probable cause, and without any other justification.

777, 782 (1985) (to constitute an arrest there must be either a seizure of the person or submission to authority; the use of the word "arrest" is not necessary); *Commonwealth* v. *Borges*, 395 Mass. 788, 792 n.3 (1985) (use of force in detaining a suspect "may raise the nature of a seizure from an investigatory stop to the level of an arrest requiring probable cause"). The judge never reached this event because he had found that an unjustified stop had occurred earlier. But the fact of the actual seizure — the "custodial arrest," see *Commonwealth* v. *Skea*, 18 Mass. App. Ct. 685, 690 (1984) — was revealed by the undisputed testimony of the police officer who "grabbed" the defendant, and put handcuffs on him. We have no reason not to accept that testimony as fact even though there is no finding by the judge. Compare *Augat, Inc.* v. *Aegis, Inc.*, 417 Mass. 484, 491 (1994).

"To be valid, an arrest must be based on probable cause," *Commonwealth* v. *Bottari*, 395 Mass. at 783, and evidence seized as a result of an unlawful arrest must be suppressed. *Ibid.* "Probable cause to arrest exists when, at the moment of arrest, the facts and circumstances known to the police officers were sufficient to warrant a person of reasonable caution in believing that the defendant had committed or was committing a crime." *Commonwealth* v. *Gullick*, 386 Mass. 278, 283 (1982).

The judge, as we have noted, did not reach the probable cause issue presented by the arrest. However, the judge did conclude (proceeding from his ruling that there had been a stop) that there was no reasonable suspicion of criminal activity *prior* to the moment that the police left their cruiser. The judge's reasoning is clear and convincing: "All that the police saw was one man hand something to another man. This is perfectly consistent with innocent activity. The police did not see a baggie or any other type of drug container being handed over . . . . Nor did they see money being exchanged . . . . When the stop began the police did not recognize either the defendant, or [the other person] as users or distributors of narcotics." (Citations omitted.)

The only additional fact found by the judge, and which we must consider, is that the defendant, as he was walking away, dropped "something that appeared to be a plastic bag." This occurred while the officers were still in the cruiser. After the officers left the cruiser, and until the defendant was seized, nothing of any consequence happened, except that the defendant continued to walk away from the area. As to what turned out to be the two bags dropped by the defendant: there was no testimony, nor any finding, as to the appearance, shape, or size of the bags, or what might be contained within them. All that the officers knew when they arrested the defendant was that what he had dropped "appeared to be a plastic bag." The officers did not pause to examine the contents of the bags before arresting the defendant. Contrast *Commonwealth* v. *Battle*, 365 Mass. 472, 475-476 (1974), where the defendant, while in flight and pursued by the police, threw something to the ground. The police retrieved the abandoned property, examined it, and then arrested the defendant. The defendant's flight, "coupled with an experienced narcotics officer's opinion that the substance which he personally observed [footnote omitted] the defendant discard appeared to be heroin . . . created compelling grounds for arrest." *Id.* at 476.

The fact that later laboratory tests showed that the content of the bags was cocaine does not bear on whether the officers had probable cause to arrest when they saw the defendant drop what looked like a bag on the ground. See *Commonwealth* v. *Garcia*, 34 Mass. App. Ct. 645, 651 n.8 (1993) ("[A] search is not to be made legal by what it turns up," quoting from *United States* v. *Di Re*, 332 U.S. 581, 595 [1948]). Contrast *Commonwealth* v. *Laureano*, 411 Mass. 708, 710 (1992) (police saw in plain view a bag of white powder). To permit the arrest and search of persons merely when they drop something that looks like a plastic bag "would permit random . . . [arrests], which are condemned by the Fourth Amendment [to the Federal Constitution] and the [Massachusetts] Declaration of Rights." *Commonwealth* v. *Garcia, supra* at 651-652. The arrest being illegal, the evi-

dence of the cocaine seized from the defendant's person after the arrest must be suppressed.

Evidence of the cocaine in the bags retrieved from the ground is a different matter. These bags were abandoned by the defendant, and the police were free to retrieve them. See *Commonwealth* v. *Pimentel*, 27 Mass. App. Ct. 557, 562 (1989). For the reasons stated above, these bags may not be used as evidence to justify either the seizure and arrest of the defendant, or the ensuing search of his person which yielded another bag of cocaine. But the use of the abandoned drugs by the Commonwealth as evidence at the trial is not otherwise restricted.

The judge's order, insofar as it suppressed the bag of cocaine found on the person of the defendant, is affirmed; in all other respects, the suppression order is reversed.

*So ordered.*