Burnes, J.
The defendant stands indicted on charges of unlawful possession of a firearm, unlawful possession of ammunition and possession of a class B substance with the intent to distribute. Before this Court is the defendant’s motion to suppress physical evidence. In support of his motion, the defendant argues that the evidence was seized in violation of his rights under art. 14 of the Massachusetts Declaration of Rights. Based on the reasons set forth below, the defendant’s motion is DENIED.
FINDINGS OF FACT
The following are facts determined from the materials submitted by the parties and the testimony of the credible witnesses at the motion to suppress hearing held on June 9, 1997.
On October 12, 1996, Boston Police Department officers Arthur Brewster and Clifton Haynes were made aware of the possibiliiy that a maroon Jetta in the area contained a gun and narcotics. Officer Broderick had received this information from an informant approximately seven to ten days before and had relayed the information to Officer Haynes at least the day before. Officer Brewster was aware of this information approximately a week earlier. Officer Broderick also received information that at about 11 a.m. on the morning of October 12, 1996, the car had drugs in it. The officers did not stake out the automobile. They do *61 not know if it was moved between 11 a.m. and when Jones was seen in it.
At approximately 1 p.m. on October 12, 1996, Officers Brewster and Haynes spotted a maroon Jetta entering Eustis Street from a service road in the development. Upon spotting the vehicle, Officer Haynes communicated with other members of the police department in the area seeking confirmation that the officers were still interested in the maroon Jetta.
Officers Haynes and Brewster then followed the maroon Jetta in their unmarked cruiser from Eustis Street to Washington Street. They intended to stop the vehicle to investigate. The driver violated no traffic laws; the vehicle had no vehicle violations. The defendant, Dana Jones, the driver of the vehicle, drove the Jetta into the Citizen’s Bank parking lot and parked in an angular space. The officers parked their vehicle, which was equipped with neither a siren or police lights, on the street about one car behind the Jetta. They were not blocking the car. The officers had not signalled the Jetta to stop; the defendant had stopped the Jetta on his own volition.
As the officers alighted from their vehicle, they watched Jones get out of the Jetta, accompanied by a little girl. Officers Haynes and Brewster, each in plain clothes, with police badges displayed, approached the Jetta and the defendant. Officer Haynes approached the passenger side of the car while Brewster went to the driver’s side. Officer Brewster talked to the defendant while he stood at the rear of the Jetta with the little girl.
Brewster introduced himself and Officer Haynes as officers of the Boston Police Department. Brewster told Jones that they had information that the Jetta contained a gun and drugs. Officer Brewster asked permission to look inside the Jetta. The defendant agreed and said “no problem.” At no point during this encounter did the defendant ask to leave.
After indicating to the officers that they could look inside the Jetta, the defendant opened the rear driver’s side door. He removed a green duffel bag from the car and proceeded to run away from the officers and the Jetta, leaving the little girl behind. The defendant ran through the Dudley MBTA station toward Zeiglar Street, chased by Officer Brewster, who had radioed the police station for assistance.
Brewster continued to chase the defendant into a building at 1146 Harrison Avenue. Still carrying the green duffel bag, the defendant shut and locked the door behind him. Brewster saw the defendant run through the building and out the other side.
Officer Broderick, who knew the defendant, had responded to the call for assistance in his cruiser and had watched Brewster chasing the defendant. Broderick saw the defendant, toting the green duffel bag, enter 1146 Harrison Avenue. After seeing the defendant enter the building on Harrison Avenue, Broderick proceeded toward Zeiglar Street in his cruiser. He again saw the defendant being chased on foot by a uniformed police officer. The defendant ran directly into Officer Broderick’s car which blocked his passage at Zeiglar Street.
The officers detained the defendant on Zeiglar Street. Officer Broderick retraced the defendant’s footsteps and found the green duffel bag in a stairwell outside a building between where he had been stopped and 1146 Harrison Street.
Officer Broderick held the green duffel bag, while Brewster unzipped the bag and found a handgun, packets of what was later confirmed to be cocaine, and a Massachusetts Identification Card bearing the defendant’s name and photograph.
The defendant offered credible evidence from Rev. Dale Harrison that the defendant was playing basketball at a community center on Mission Hill between approximately 8:50 a.m. and 12:30 p.m.
DISCUSSION
Article 14 of the Massachusetts Declaration of Rights prohibits unreasonable searches and seizures. Commonwealth v. Borges, 395 Mass. 788 (1985), citing Terry v. Ohio, 392 U.S. 1, 9 (1968). The reasonableness of a search and seizure is determined by balancing the need to search or seize against the invasion of the search or seizure. See Commonwealth v. Borges, 395 Mass. at 793, citing Terry v. Ohio, 392 U.S. at 21.
In order for the principles of art. 14 of the Massachusetts Declaration to be implicated, the Court must determine whether, as a matter of law, a “seizure” occurred, and if so, at what point the defendant was “seized.” Commonwealth v. Stoute, 422 Mass. 782, 785 (1996); Commonwealth v. Borges, 395 Mass. at 794. Where there is no seizure, the police activity cannot violate the defendant’s constitutional rights. Where there is a seizure, however, the defendant’s rights are implicated and violated when such seizure is not justified by reasonable and articulable suspicion. Commonwealth v. Stoute, 422 Mass. at 789. “Massachusetts courts have adhered to the test set forth in the Mendenhall-Royer [Florida v. Royer, 460 U.S. 491 (1983); United States v. Mendenhall, 446 U.S. 544 (1980)] line of cases decided prior to Hodari D. [California v. Hodari D., 499 U.S. 621 (1991)] as the proper analysis whether a seizure has occurred under art. 14 of the Massachusetts Constitution.” Commonwealth v. Thin Van Cao, 419 Mass. 383, 387 (1995). Accordingly, a person is seized by a police officer “if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.” Commonwealth v. Borges, 395 Mass. at 791, quoting United States v. Mendenhall, 446 U.S. at 554.
It follows, therefore, that not every encounter between an officer and a citizen amounts to a stop, or *62 even a seizure. Commonwealth v. Laureano, 411 Mass. 708, 710 (1992) (“The claim of police ‘pursuit’ by the defendant, however, is not a talismanic formula for converting all police investigation into a search and seizure”). See also Commonwealth v. Wedderburn, 36 Mass.App.Ct. at 560 (no seizure for purposes of art. 14 where police merely approached defendant without drawing attention to their puipose); Commonwealth v. Pimentel, 27 Mass.App.Ct. 557, 560 (1989) (defendant approached by three officers prior to dropping a bag containing cocaine was not seized for purposes of the Fourth Amendment where the officers did not engage in any show of authority which would have caused a reasonable person to feel he could not walk away and where although the defendant knew one of the officers there was nothing to show that the officers had harassed the defendant in the past and thereby provoked him into dropping the bag). “ ‘Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer’s request might be compelled.” Commonwealth v. Pimentel, 27 Mass.App.Ct. at 560, quoting United States v. Mendenhall, 446 U.S. at 554-55. See also Commonwealth v. Laureano, 411 Mass. at 710 (defendant, prior to police speaking with him or displaying any indicia of authority, walked to a public men’s room in a bar, detectives followed, and then saw in plain view a bag of white powder, no seizure for art. 14 purposes).
Thus, officers do not need justification for approaching a defendant to conduct a threshold inquiry. See, e.g., Commonwealth v. Laureano, 411 Mass. at 710; Commonwealth v. Sanchez, 403 Mass. at 644-45. See also United States v. West, 651 F.2d 71, 73 (1st Cir. 1981) (seizure occurs only when officers engaged in show of authority); Commonwealth v. Fraser, 410 Mass. 541, 543-44 (1991) (“the police do not effect a seizure merely by asking questions unless the circumstances of the encounter are sufficiently intimidating that a reasonable person would believe he was not free to turn his back on his interrogator and walk away"); Commonwealth v. Moore, 32 Mass.App.Ct. 924, 924 (1992) (defendant not seized when officers approached the defendant, asked for his license, informed defendant that he did not have to talk and defendant invited the officer to search him; became seized when officer found cocaine on the defendant’s person). Furthermore, the officers’ subjective intent — that they intended to stop the defendant — is irrelevant so long as that intent was not communicated to the defendant. Commonwealth v. Borges, 395 Mass. at 791-92 (reasonable person, objective rather than subjective standard applied in Massachusetts).
The pivotal question in this case is at what point the defendant was seized and further, if that seizure was justified. The defendant argues that he was seized the moment the officers began to tail his car. This Court does not agree. See Commonwealth v. Pimentel, 27 Mass.App.Ct. at 560-61 (defendant not seized before he dropped drugs on ground when officers had approached him, did not engage in any show of authority, had not harassed the defendant in the past and a reasonable person in the defendant’s position would have felt free to walk away). The defendant was not seized, for purposes of art. 14, until he decided to grab the duffel bag and take flight. Thus, the officers needed no justification to tail his vehicle, approach him, introduce themselves and ask him for consent to look inside his vehicle. See Commonwealth v. Stoute, 422 Mass. at 789; Commonwealth v. Laureano, 411 Mass. at 710.
The officers began to follow the defendant’s car without stopping him, an action which did not require justification.[1] Commonwealth v. Wooden, 13 Mass.App.Ct. 417, 419-20 (1982) (“nothing improper” about “surveillance based on a hunch,” which included turning onto a street to follow the defendants without stopping them). The officers merely followed the defendant’s car and parked a car or two behind the Jetta, again an action which did not require justification. As in Commonwealth v. Pimentel, the officers did not block the defendant’s car or surround him, or otherwise impede his ability to walk away. 27 Mass.App.Ct. at 561. Cf. Commonwealth v. Sanderson, 398 Mass. 761, 766 (1986) (police block defendant’s car; defendant arrested by this, and other actions). When the officers alighted from their vehicle and approached the defendant, their actions still did not amount to a seizure. Commonwealth v. Wedderburn, 36 Mass.App.Ct. 558, 560-64 (1994) (where officers approached the defendant no stop or seizure at that time; where the defendant, walking away dropped a plastic bag, abandoned it, police were free to seize the bag, and when it was determined to contain cocaine, to use the evidence). Moreover, when Officer Brewster identified himself and Officer Haynes, and engaged in a short conversation with the defendant, obtaining his permission to look inside the Jetta, the officers still did not exceed the parameters of a permissible threshold investigation. Commonwealth v. Sanchez, 403 Mass. at 643-45 (where officer did not engage in any show of authority, beyond simply identifying himself to defendant inside taxi line outside the air terminal, and obtaining consent to search the defendant, defendant was not seized).
The defendant relies on Commonwealth v. Stoute for the proposition that the officers’ approach of the defendant should have been justified by a reasonable suspicion. 422 Mass. at 785-89. Again, this Court does not agree. The defendant is correct in his assertion that Commonwealth v. Stoute declares that a person is seized when a person’s personal liberty has been significantly restrained by the police or when an officer initiates a pursuit with the intent of requiring *63 the person to submit to questioning. Id. However, in this case, the defendant was not pursued until he began his flight.
In Massachusetts courts, police contact transforms from a threshold inquiry, which does not require justification, into a stop requiring a reasonable suspicion, when the police begin to pursue a defendant. Commonwealth v. Thibeau, 384 Mass. 762, 764 (1981). “... [A] pursuit, which, objectively considered, indicates to a person that he would not be free to leave the area (or to remain there) without first responding to a police officer’s inquiry, is the functional equivalent of a seizure, in the sense that the person being pursued is plainly the object of an official assertion of authority, which does not intend to be denied, and which infringes considerably on the person’s freedom of action.” Commonwealth v. Stoute, 422 Mass. at 789. Seizure for constitutional purposes begins when a defendant is pursued by officers who must at the time of pursuit have a reasonable suspicion based on articulable facts. See id. See also Commonwealth v. Thibeau, 384 Mass. at 764.
In this case, the officers developed a reasonable suspicion that the defendant was engaging or had engaged in criminal activity when he grabbed the duffel bag from the maroon Jetta and began to run. See Commonwealth v. O’Laughlin, 25 Mass.App.Ct. 998, 999 (1988) (pursuit began some time after the defendant started to run out the door). See also Commonwealth v. Jiminez, 22 Mass.App.Ct. 286, 288-90 (1986); Commonwealth v. Wooden, 13 Mass.App.Ct. at 419-20. They had approached the defendant who consented to the search of his vehicle; immediately thereafter, he reached in and grabbed a bag and began to flee; he left a child at the scene with the officers. Although flight alone cannot be the basis upon which to justify the stop of a defendant, it is one of the factors to consider. See Commonwealth v. Borges, 395 Mass. at 796. See also Commonwealth v. Thibeau, 384 Mass. at 762; Commonwealth v. Crowley, 13 Mass.App.Ct. 915 (1982). Such behavior entitled the officers to chase the defendant to conduct an initial stop. “A flight from police, after an initial consent to search and before any pursuit by the police, provides a reasonable and articulable suspicion justifying an investigatory stop.” Commonwealth v. Sanchez, 403 Mass. at 645.
The defendant relies on Commonwealth v. Thibeau, 384 Mass. at 764, for the proposition that the defendant’s flight did not “turn an unjustified stop into one with justification.” (Defendant’s Memorandum in Support of Motion to Suppress, at 5.) Again, the defendant’s reliance is misplaced. In that case, the Court held that the defendant’s flight could not be used to justify his stop because police began pursuit of the defendant before he fled. Id. at 764. By contrast, in this case, as in Commonwealth v. Sanchez, the defendant’s flight occurred before the police pursed him, thus giving the police reasonable and articulable suspicion before the stop. 403 Mass. at 646. Moreover, as in Commonwealth v. Sanchez, “the defendant’s actions caused further suspicion because he fled after an initial consent to a search.” Id.
Finally, the defendant challenges the propriety of the officers’ seizure of the contraband from the green bag discarded by the defendant. Art. 14 requires that any government seizure of personal property located in an area where the owner has a legitimate expectation of privacy be accomplished pursuant to a properly issued warrant supported by probable cause. Commonwealth v. Straw, 422 Mass. 756, 758 (1996). See also Commonwealth v. Wedderburn, 36 Mass.App.Ct. at 564 (for purposes of art. 14 of the Massachusetts Declaration of Rights, citing Commonwealth v. Pimentel, 27 Mass.App.Ct at 562, Court held bags of cocaine dropped by the defendant upon approach of police officers, considered abandoned and police were free to retrieve them). When a defendant abandons property, however, the defendant relinquishes any expectation of privacy in the property and no warrant is necessary. Commonwealth v. Straw, 422 Mass. at 758. Thus, the question becomes whether the defendant had any continued expectation of privacy in the contents of the property or the place and circumstances from which it was seized. Id. at 759. “Resolution of the question requires consideration [of] whether the defendant had a subjective expectation of privacy in the place searched, and in the contents . . . which could be considered objectively reasonable or legitimate.” Id. In the present case, the contents of the green duffel bag recovered from the stairwell in which it was discarded would be considered abandoned only if the defendant had voluntarily surrendered all control over the package in a way which demonstrated that he had relinquished any continued expectation of privacy. Id.
Here, as a matter of law, the defendant had no continued expectation of privacy in the property he threw into a stairwell outside an apartment building, between 1146 Harrison Street and Zeiglar Street, while being pursued by police officers.[2] Commonwealth v. Battle, 365 Mass. 472, 475 (1974) (no expectation of privacy in bags of narcotics dropped by defendant in hallway inside building). See Commonwealth v. Thomas, 358 Mass. 771, 773-75 (1971) (defendant had no right of privacy in the common hallway).
ORDER
Based on the reasons set forth above, the defendant’s motion to suppress evidence is DENIED.

 Because the Court holds that the defendant was not seized until he decided to flee, it need not address the defendant’s argument that the officers’ initial interest in the defendant was based upon information from a confidential informant, whose information, according to the defendant, did not satisfy the basis of knowledge or veracity tests. Further, because the officers did not rely on the information provided by the informant, the evidence of Jones’ whereabouts at 11 a.m. is irrelevant.

 The facts in the present case differ significantly from those in Commonwealth v. Straw, 422 Mass. 756 (1996), where the Supreme Judicial Court held that the defendant did not abandon his briefcase when he threw it out a window of his home, into fenced-in curtilage, an area enjoying full Fourth Amendment protection. Id. In that case, the Supreme Judicial Court based its decision on the fact that the defendant enjoyed a high expectation of privacy in his own home and that no member of the public had any access to the briefcase.