**UNITED STATES of America, Appellee,**

v.

**Claude K. WEST, Defendant, Appellant.**

**No. 80–1727.**

United States Court of Appeals,
First Circuit.

Heard May 6, 1981.

Decided June 16, 1981.

Thomas D. Edwards, Boston, Mass., with whom Douglas K. Mansfield, and Chaplin, Casner & Edwards, Boston, Mass., were on brief, for appellant.

John H. LaChance, Asst. U. S. Atty., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before GIBSON,* Senior Circuit Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Claude West was convicted of possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). His contention on appeal is that the district court erred in denying his motion to suppress the cocaine seized from his suitcase by Drug Enforcement Administration (DEA) agents at Logan Airport in Boston.

There was testimony at the suppression hearing from which the court could find the following facts: West arrived at the airport in Miami on the morning of January 15, 1980, checked in for a flight to Boston, and made a reservation for a connecting flight to Burlington, Vermont. Two Dade County Public Safety Department officers, their suspicion aroused by West's appearance and conduct,[1] approached him after he had passed through the metal detector and started walking down the concourse. He responded to their questions in a cooperative manner, showing them identification and permitting a search of his boots, but refusing to permit a search of his suitcase. West terminated the conversation himself, telling the officers to "keep up the good work" and leaving to board his flight. The officers alerted DEA agents in Boston, who awaited West's arrival there, observed his conduct,[2] and approached him while he

waited for his flight to Burlington. Twice in the course of his conversation with the agents, West told them (falsely, as the agents knew) that his suitcase had been searched in Miami. Asked about this a third time, he recanted and said that it had not. The agents requested his consent to search the suitcase, and West refused. The agents then told West that they were going to summon a narcotics detector dog to sniff the suitcase and that he could either wait with the suitcase (thereby missing his flight) or go on to Burlington. He chose the latter. The dog arrived and alerted to the suitcase, indicating the presence of drugs. The agents then obtained a warrant, searched the suitcase, and found 20 ounces of cocaine.

I.

■ West presents two arguments on appeal. First, he argues that the encounter with the officers in Miami was a seizure of his person which, under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), could be justified only by "reasonable suspicion" of criminal activity, which the officers lacked. Since the Miami encounter led the DEA agents to stop him in Boston, he argues that the cocaine was obtained as a result of this encounter and should therefore be suppressed.

The standard for determining whether a seizure of the person has occurred has been stated as, "If in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave," *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (Stewart, J.), 560 n.1 (Powell, J., concurring). It can, of course, be maintained that one might always won-

* Of the Eighth Circuit, sitting by designation.

1. Officer Facchiano testified that West "appeared somewhat ill at ease," "continually looked around," and did not set his suitcase on the floor while waiting in line; that he did not check his suitcase; that his suit was "somewhat frayed" as if he had slept in it; that his eyes were "peaked and red"; and that he appeared to have a day's growth of beard.

2. DEA agent Sampson testified that West disembarked from his flight from Miami, walked to the gate for his Burlington flight, checked in, went to the men's room, came out, stood looking up and down the corridor about three times in either direction, and then returned to the gate area and sat down.

der if he were really free to leave when approached and questioned by an identifiable law enforcement officer. On this premise, any approach, even the most casual, would arguably be a "seizure."[3] Few courts, however, have taken such a reductionist view of the free-to-leave standard. Rather, the cases have found a seizure only where the police have engaged in some "show of authority" which could be expected to command compliance, beyond simply identifying themselves as police. *United States v. Mendenhall*, 446 U.S. at 553, 100 S.Ct. at 1876; *Terry v. Ohio*, 392 U.S. at 19 n.16, 88 S.Ct. at 1878, 1879 n.16.

In *Terry v. Ohio* the Court found that a seizure occurred when the officer "took hold of [the suspect] and patted down the outer surfaces of his clothing." *Id.*, at 19, 88 S.Ct. at 1878. The Court stated that

Not all personal intercourse between policemen and citizens involves "seizures" of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.

*Id.*, at 19 n.16, 88 S.Ct. at 1879 n.16. The Court "assumed" that no seizure occurred before the officer applied physical force. *Id.*, at 19 n.16, 88 S.Ct. at 1879 n.16. *See United States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 1870, 1876, 64 L.Ed.2d 497 (this assumption appears "entirely correct").

Similarly, in *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), upon which West relies, the Court found a seizure "when the officers detained appellant for the purpose of requiring him to identify himself." In that case, the police approached the defendant in an alley and requested identification; when he refused, they frisked him, arrested him, and took him to the police station. The Court had no need to decide at what precise moment the officers "detained" Brown, since it was clear that a seizure did occur at some point; but a fair reading of *Brown* in the light of *Terry* does not suggest that the Court found a seizure before force was used. *United States v. Mendenhall*, 446 U.S. at 556, 100 S.Ct. at 1878 (no seizure in *Brown* up to the point at which Brown was frisked and arrested.)

In *United States v. Mendenhall*, 446 U.S. at 554, 100 S.Ct. at 1877, Justice Stewart gave the following examples of the kinds of circumstances that would indicate a "show of authority" such as to constitute a seizure:

the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

The district court in this case found that none of these nor any comparable circumstances existed, and that West failed to prove any other display of authority by the officers which would indicate a seizure.

On appeal, West relies on the particular location of the encounter: just beyond the metal detector. He argues that this particular location, in the context of the commonly known and accepted security procedures of airports, carries a strong suggestion of the exercise of authority. But there was evidence from which the court could find that the officers approached West only after he had passed through the metal detector without the buzzer sounding and had retrieved his suitcase and taken several steps. The officers were dressed, it could be found, so as to make them readily distinguishable from airport security personnel. And West, in fact, eventually did leave, on his own initiative. *See* note 3, *supra*. Under these circumstances, we cannot say that the court erred in failing to infer from the location of the encounter that West felt constrained not to leave.[4] The district

---

3. In the present case, as the government points out, West terminated the conversation himself, indicating that he, in fact, did feel free to leave at the moment when he did so.

4. West cites *United States v. Bowles*, 625 F.2d 526 (5th Cir. 1980) and *United States v. Santora*, 619 F.2d 1052 (5th Cir. 1980), as recent cases finding a seizure under circumstances like these. *Bowles* is distinguishable from this

court's conclusion that no seizure occurred in the Miami encounter was not clearly erroneous.

As no seizure occurred, we do not consider whether the Miami agents had such a reasonable suspicion that West was engaged in criminal activity as would have permitted a seizure.

## II.

■ West's second contention is that the detention of his suitcase in Boston was unlawful because it was not based on probable cause. The district court supportably found that by the time they detained the suitcase the agents in Boston reasonably suspected West of criminal activity. West contends that the temporary detention of his suitcase while he was between flights was so substantial an intrusion on his privacy as to require probable cause rather than merely reasonable suspicion. We rejected a very similar claim in *United States v. Viegas*, 639 F.2d 42, 45 (1st Cir.), *cert. denied,* —— U.S. ——, 101 S.Ct. 2046, 68 L.Ed.2d 348 (1981). West argues that this case differs from *Viegas* in that West was continuing on another flight, while Viegas had concluded his air travel, so that the delay and inconvenience necessarily imposed by the detention of the suitcase was greater here. This may be so, although the difference does not seem to us as great as West makes out. In any case, the difference is not of sufficient degree to require a different result. Given the information the agents had at the time they detained the suitcase, particularly West's false statement that it had been searched, and given the lack of effective alternatives available to the agents under the circumstances, and the strong likelihood that West, now fully alerted, would take immediate steps to dispose of any contraband located in the suitcase, the agents' action in detaining the suitcase for investigation was reasonable.

*Affirmed.*

case in that there the agent "passed his quarry, held out his credentials and turned to face defendant, blocking his path and stopping him from proceeding further." *Id.,* at 532. In *Santora,* the court found a seizure on facts similar to these, but then found that the agents had

reasonable suspicion to justify the seizure. Given the latter holding, the former was not strictly necessary to the result in that case. To the extent that *Santora* represents a view of the test for seizure different from that we have expressed here, we decline to follow it.