## COMMONWEALTH vs. JUAN A. SANCHEZ.

Suffolk. October 3, 1988. — December 22, 1988.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Constitutional Law*, Search and seizure. *Probable Cause. Search and Seizure*, Probable cause, Threshold police inquiry. *Practice, Criminal*, Arraignment.

A person, questioned by a police officer in a taxi line outside the air terminal where he had just disembarked, was not "seized" within the meaning of the Fourth Amendment, where the officer did not engage in any "show of authority," beyond simply identifying himself as a policeman, which would have led a reasonable person to believe he was not free to leave. [643-645]

The flight of a person from police after his initial consent to a search and before any pursuit began, provided the police with a reasonable and articulable suspicion justifying an investigatory stop of that person. [645-646]

A seizure of heroin was lawful where the search that yielded the heroin was incident to a lawful arrest. [646]

The defendant in a criminal case demonstrated no prejudice from a forty-nine day delay between the return of the indictments and his arraignment thereon; nor did he show any intentional misconduct on the part of the prosecution or unfair advantage to the Commonwealth with respect to the delay, with the result that the defendant's motion to dismiss the indictments on those grounds was correctly denied. [646-647]

The fact that a jury acquitted a criminal defendant on a charge of assault and battery on a police officer did not "negate" the probable cause the police had to arrest the defendant on that charge at the time the arrest was made so as to invalidate a search incident to the arrest which yielded unlawfully possessed controlled substances. [647]

INDICTMENT found and returned in the Superior Court Department on December 3, 1986.

A pretrial motion to suppress evidence was heard by *Cortland A. Mathers*, J. The case was tried before *John C. Cratsley*, J., and posttrial motions were heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Gregory P. Hancock* for the defendant.

District Attorney for the Suffolk District for the Commonwealth.

ABRAMS, J. The defendant appeals from his conviction for trafficking in cocaine. G. L. c. 94C, §§ 31, 32A (a).[1] The defendant alleges error in the denial of (1) his motion to suppress; (2) his motion to dismiss, based on a delayed arraignment after indictment; and (3) his posttrial motion for a required finding of not guilty, or for a new trial. G. L. c. 278, § 11. Mass. R. Crim. P. 25 (a), 378 Mass. 842 (1979). We transferred the case to this court on our own motion. We affirm.

The motion judge found the following facts. On October 22, 1986, the defendant arrived at Logan Airport on the Eastern Airlines shuttle. He left the plane in a hurry. He wore a red and blue shirt, baggy sweatpants, and shoes without socks. He carried two magazines and a brown paper bag. Troopers Palombo and MacDonald, two plainclothes officers experienced in drug related investigations, observed the defendant leaving the shuttle.

The defendant, as he left the shuttle ramp, watched MacDonald, who was holding a large radio. The defendant did not take his eyes off MacDonald. As MacDonald followed the defendant, the defendant looked around at MacDonald and then several times at Palombo, although the officers were following the defendant apart from one another. The defendant then went to the line of persons waiting for taxis.

---

[1] The defendant also was convicted of possession of heroin, but the indictment was placed on file with the defendant's consent. Thus, there is no appeal before us as to this conviction. *Commonwealth* v. *Tavares*, 385 Mass. 140, 141 n.1, cert. denied, 457 U.S. 1237 (1982). *Commonwealth* v. *Delgado*, 367 Mass. 432, 437-438 (1975). We discuss the legality of the arrest and search which yielded the heroin and the facts surrounding the arrest and search, because these events led to the discovery of the cocaine at issue. The defendant does not argue that if the arrest and the search for heroin is legal there is anything improper with the custodial search which yielded the cocaine.

Palombo walked up to the defendant as the defendant stood in line. The officer held open his wallet, displayed his badge at about waist level, said he was a police officer, and asked the defendant if he would speak with him.

The defendant became visibly pale and his hands began to tremble as he looked from the officer's face to his badge. MacDonald stood ten to fifteen feet away. The defendant said, "Okay" to the request. Palombo asked the defendant where he was coming from and where he was going, if he had a business, if he were in business in Boston or New York. Palombo also asked whether he had an airline ticket and identification. The defendant answered these questions. As the defendant sought his identification, he put the magazines and brown paper bag between his legs. His legs appeared to tremble.

Palombo then stated that he was a narcotics investigator and requested permission to search the defendant for narcotics. Palombo told the defendant that the defendant was not obliged to submit to a search, but was merely being asked if he would agree to be searched.

The defendant agreed to a search provided that it could be private and not in public on the sidewalk. Palombo suggested a men's room nearby, and the defendant agreed. Palombo called over MacDonald. The three men began to enter the airport terminal in single file, with MacDonald first, the defendant second, and Palombo third. As MacDonald stepped on the automatic door pad and entered the terminal, the defendant bolted into the street.

A taxicab then struck the defendant and threw him back onto the side of the street near the terminal. He fled, with MacDonald in pursuit. When MacDonald identified himself as a police officer, the defendant spun around quickly and knocked MacDonald to the ground.

The defendant ran in such a manner that he lost his shoes. During the flight, he scaled a fence. The defendant was apprehended some minutes later, barefoot. He was arrested for an assault on MacDonald. A search incident to the arrest disclosed heroin. Although not explicitly found by the motion judge, the defendant admits that the cocaine was discovered during a

Commonwealth *v.* Sanchez.

custodial search of the defendant at State police headquarters at Logan Airport after the arrest.

1. *Fourth Amendment claim.* The motion judge concluded that no "seizure" occurred within the meaning of the Fourth Amendment to the Federal Constitution, because the defendant's responses to the trooper's questions were consensual until the defendant broke away. The judge also concluded that "the fact is not disputed that the defendant committed an assault and battery on the police officer." Therefore, he found the subsequent search which yielded the heroin to be incident to an arrest and thus constitutionally justified. *United States* v. *Robinson,* 414 U.S. 218, 225-226 (1973).

We first determine whether, as a matter of law, a "seizure" within the meaning of the Fourth Amendment occurred when the officers initially approached the defendant.[2] If there was no seizure, the police activity in questioning the defendant did not violate the defendant's constitutional rights. If, however, there was a seizure not justified by reasonable and articulable suspicion, the illegality of the seizure may render inadmissible the evidence obtained.

"An objective standard is used to determine when a seizure has occurred: 'a person has been "seized" . . . if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " *Commonwealth* v. *Borges,* 395 Mass. 788, 791 (1985), quoting

---

[2] As part of his findings leading to the determination that there had been no seizure, the motion judge found that "[t]he defendant consented" to be searched. The judge found the following subsidiary facts which supported his finding of consent: "[T]he only evidence presented indicates the defendant's responses and physical movements to have been consensual until he broke away." He also found that the defendant was expressly told that he did not have to submit to a search. We accept the motion judge's subsidiary findings of fact as long as they are supported by evidence. *Commonwealth* v. *Moon,* 380 Mass. 751, 756 (1980). The defendant does not argue that these subsidiary facts are unsupported by the evidence. Rather, he claims that the facts of this case, as a matter of law, compel the conclusion that there was no consent but rather a Fourth Amendment seizure. "[U]ltimate findings and rulings of a judge may give rise to a meaningful appeal, even in a case where his subsidiary findings are beyond practical challenge." *Id.* See *Commonwealth* v. *Tavares,* 385 Mass. 140, 145 (1982), citing *Brewer* v. *Williams,* 430 U.S. 387, 403 (1977).

*United States* v. *Mendenhall*, 446 U.S. 544, 554 (1980) (opinion of Stewart, J.). The defendant argues that a reasonable man in his position would not have felt free to leave. We do not agree.

The United States Supreme Court has not yet determined "whether mere questioning of an individual by a police official, without more, can amount to a seizure under the Fourth Amendment." *Immigration & Naturalization Serv.* v. *Delgado*, 466 U.S. 210, 216 (1984). The United States Court of Appeals for the First Circuit, however, has ruled that, under the objective standard concerning consent, a seizure can be found "only where the police have engaged in some 'show of authority' which could be expected to command compliance, beyond simply identifying themselves as police." *United States* v. *West*, 651 F.2d 71, 73 (1st Cir. 1981), vacated on other grounds, 463 U.S. 1201 (1983), cert. denied, 469 U.S. 1188 (1985). See *United States* v. *Berryman*, 717 F.2d 651, 661 (1st Cir. 1983) (Breyer, J., dissenting), rev'd per curiam, 717 F.2d 650 (adopting dissenting opinion), cert. denied, 465 U.S. 1100 (1984); *United States* v. *Regan*, 687 F.2d 531, 535 (1st Cir. 1982). See also *Florida* v. *Royer*, 460 U.S. 491, 497 (1983) (plurality opinion); *Terry* v. *Ohio*, 392 U.S. 1, 19 n.16 (1968).

There is no indication that the police engaged in any "show of authority" prior to the defendant's flight. In addressing the officer's actions in approaching the defendant, the motion judge found that Palombo identified himself as a police officer, asked the defendant to talk, informed the defendant that he was conducting a narcotics investigation, and asked the defendant if he would consent to a search. The officer told the defendant that he was not obliged to submit to a search, but was being asked if he would so agree.[3] Except for the police officer's

---

[3] The defendant's version of the facts differs from those found by the motion judge. The defendant claims that he refused to consent to a search, at which point an officer grabbed him by the right arm to escort him back into the terminal. It was at this time, the defendant claims, that he broke away and fled. Palombo testified essentially as to the facts found by the motion judge, and the judge found the officer's account to be credible. We accept the judge's resolution of conflicting testimony. *Commonwealth* v. *Cruz*, 373 Mass. 676, 682 n.2 (1977).

identification of himself, which included showing his badge, and the officer's questioning of the defendant, there was no "show of authority," *United States* v. *West, supra,* and thus no seizure. Cf. *Florida* v. *Royer, supra* at 508-509 (Powell, J., concurring) (police took the defendant to a "large closet," retrieved his baggage without permission, and retained his ticket); *Commonwealth* v. *Sanderson,* 398 Mass. 761, 766 (1986) (police blocked defendant's car); *Commonwealth* v. *Borges,* 395 Mass. 788, 789-790 (1985) (police made defendant remove his shoes). See *United States* v. *West, supra* (show of authority may consist of physical force, threatening presence, display of a weapon, physical touching, or use of authoritarian language or tone of voice). Until the time the defendant fled, therefore, his Fourth Amendment rights had not been implicated.

If a defendant flees after having consented to a search, the officers are justified in pursuing him for the purpose of subjecting him to an initial investigatory inquiry. "A police officer is warranted in making a threshold inquiry 'where suspicious conduct gives the officer reason to suspect that a person has committed, is committing, or is about to commit a crime.'" *Commonwealth* v. *Bacon,* 381 Mass. 642, 643 (1980), quoting *Commonwealth* v. *Silva,* 366 Mass. 402, 405 (1974). "In following the constitutional standards of *Terry* v. *Ohio, supra,* we have required that the police officer's action be based on specific and articulable facts and the specific reasonable inferences which follow from such facts in light of the officer's experience." *Commonwealth* v. *Silva, supra* at 406. A flight from police, after an initial consent to a search and before any pursuit by the police, provides a reasonable and articulable suspicion justifying an investigatory stop.

The defendant relies on *Commonwealth* v. *Thibeau,* 384 Mass. 762 (1981), for the proposition that "the defendant's flight from the officer's pursuit cannot be considered" to justify the investigatory stop. *Id.* at 764. The defendant's reliance is misplaced. In *Thibeau,* we said that "a stop starts when pursuit begins." *Id.* Because the police in that case began pursuing the defendant before he fled, they could not use his subsequent

flight to justify the stop. Here, however, the defendant broke away from the police before they pursued him, thus providing the police with a reasonable and articulable suspicion before the stop. Also, here the defendant's actions caused further suspicion because he fled after an initial consent to a search. In *Commonwealth* v. *Thibeau*, there had been no initial conversation between the police and the defendant, and certainly no consent to a search.

During the course of his flight, the defendant struck Mac-Donald. When the defendant was apprehended, the troopers arrested him for assault and battery on a police officer. Because the search which yielded the heroin was incident to the defendant's arrest, it is lawful under the Fourth Amendment. *United States* v. *Robinson*, 414 U.S. 218, 225-226 (1973).[4]

2. *Late arraignment.* The defendant argues that the delay of approximately forty-nine days between return of the indictment and the time of his arraignment in Superior Court requires dismissal of the indictment. There is no authority in Massachusetts for dismissal of an indictment because of a delay in arraignment. "Dismissal of indictments is a drastic remedy for official misconduct." *Commonwealth* v. *Cinelli*, 389 Mass. 197, 210, cert. denied, 464 U.S. 860 (1983).[5] Even in the case of a delay in bringing a defendant into court for the first time after arrest, see Mass. R. Crim. P. 7 (a) (1), as amended, 397 Mass. 1225 (1986), the defendant's remedy is suppression of evidence obtained from him during that delay. See *Commonwealth* v. *Hodgkins*, 401 Mass. 871, 876-877 (1988); *Commonwealth* v. *Dubois*, 353 Mass. 223, 226 (1967); *Commonwealth* v. *Banuchi*, 335 Mass. 649, 656-657 (1957). In the present case, no evidence was obtained from the defendant between indictment and arraignment.

---

[4] The defendant does not argue in his brief that the search violated G. L. c. 276, § 1. Neither the statutory nor the constitutional legality of the search which yielded the heroin is before us. See note 1, *supra*. We note that the issue concerning G. L. c. 276, § 1, was not raised before the motion judge, and, therefore, the judge did not make any subsidiary findings on probable cause to arrest for possession of controlled substances. We further note that the police testimony, if credited, would support subsidiary findings to the effect that there was such probable cause.

[5] The defendant was brought to trial ninety-seven days after indictment.

We do not excuse the Commonwealth's failure to bring the correct man named Juan Sanchez from the Charles Street jail into the Superior Court on the day set for arraignment.[6] Nevertheless, the defendant has not shown any prejudice to his case, nor has he shown intentional misconduct on the part of the Commonwealth or any unfair advantage to the Commonwealth — especially in the form of evidence obtained during the delay. Thus, there is no basis for dismissal of the indictment.

3. *Motion for required finding of not guilty or for a new trial.* The defendant asserts that his acquittal on a charge of assault and battery on MacDonald at Logan Airport requires a finding of not guilty on the drug charge because it undercuts the motion judge's conclusion that the police had probable cause to arrest him for assault and battery on a police officer. There is no merit to this argument.

The jury's acquittal did not cast doubt on the officers' probable cause to arrest. "A finding of not guilty at a criminal trial can result from any number of factors having nothing to do with the defendant's actual guilt." *Commonwealth* v. *Cerveny,* 387 Mass. 280, 285 (1982). At most, the jury's verdict meant that the Commonwealth had not proven its case of assault and battery on a police officer beyond a reasonable doubt. That burden of proof is different from the burden of proof for probable cause. See *Commonwealth* v. *Haas,* 373 Mass. 545, 555 (1977), *S.C.,* 398 Mass. 806 (1986). The trial judge correctly declined to interpret the jury's verdict as negating probable cause for the defendant's arrest at the time the arrest was made.

*Judgment affirmed.*

---

[6] We note that the Commonwealth did arraign one Juan Sanchez on the appropriate day. However, the wrong Juan Sánchez was brought to court and arraigned on that day.