COMMONWEALTH vs. JORGE D. MARRERO, JR.

No. 91-P-866.

Suffolk. May 8, 1992. - October 20, 1992.

Present: KASS, GILLERMAN, & GREENBERG, JJ.

*Search and Seizure*, Threshold police inquiry. *Constitutional Law*, Search and seizure.

The Fourth Amendment to the United States Constitution did not require the suppression of a loaded handgun that a defendant threw aside while being chased by a police officer, where the officer had sufficient articulable facts to warrant a stop of the defendant once he commenced his flight and where, since the defendant's decision to run away was not prompted by any inappropriate police action, the officer's pursuit was warranted. [442-445]

INDICTMENTS found and returned in the Superior Court Department on July 25, 1990.

A pretrial motion to suppress evidence was heard by *Sandra L. Hamlin*, J., and the cases were heard by *James P. Donohue*, J.

*Eric Brandt*, Committee for Public Counsel Services, for the defendant.

*David Mark*, Assistant District Attorney, for the Commonwealth.

GREENBERG, J. Convicted after a jury-waived trial on three indictments charging him with crimes[1] related to his possession of a loaded handgun, the defendant argues on appeal that his motion to suppress the revolver and ammunition, which he jettisoned while fleeing from a Boston police officer, was improperly denied. After a hearing, a judge of the Supe-

---

[1]The indictments were brought under G. L. c. 269, § 10(*a*) (carrying a firearm); G. L. c. 269, § 10(*h*) (possession of ammunition); and G. L. c. 266, § 60 (receiving stolen property).

rior Court had issued written findings and concluded that the officer, Michael F. Devane, had developed a sufficiently articulable basis to justify a stop of the defendant once he began to run. We affirm.

The facts found by the motion judge, which we have embellished with undisputed details from the record, are as follows.[2] At approximately 9:00 P.M. on July 4, 1990, Officer Devane and his partner Officer Perkins were on patrol in the area of Columbia Road and Dudley Street in Boston. The officers' interest was piqued by a man sitting atop an electrical box, who, upon their approach, began banging on the box by swinging a set of keys attached to a rope. Seeing nothing else unusual, the patrolmen moved on. A little over an hour later that evening the two officers responded to a breaking and entering committed at the same intersection. At the scene, Officer Devane learned that suspects had broken down the door of an abandoned building and then gained entry into an adjacent clothing shop through the dividing wall. Two individuals were apprehended and, in the process, a police officer was injured.

Ten days later, while on patrol in a marked cruiser around 8:45 P.M., the same two officers decided, with the earlier crime in mind, to question a group of young men who were standing near the site of the earlier break. As he approached the group, Officer Devane noticed the defendant appear from around a corner near the doorway of the abandoned building, which was now boarded up. The defendant, walking on the sidewalk about a foot from the building, came straight toward the officer. Although Officer Devane admitted that he was unable to discern if the door to the building was ajar, he attempted to ask the defendant a few questions. Then the character of his inquiry began to change. Without breaking

---

[2]The defendant does not quibble with the facts found by the motion judge, which are supported by the evidence. *Commonwealth* v. *Sanchez*, 403 Mass. 640, 643 n.2 (1988). Rather, he challenges the judge's ultimate conclusion regarding the constitutional implication of those facts, which, of course, may form the basis of an appeal. See *ibid.* The ultimate findings are, however, entitled to substantial deference. *Commonwealth* v. *Bottari*, 395 Mass. 777, 780 (1985).

stride, the defendant bluntly shouted "Fuck you," brushed by the group, and broke into a run. Officer Devane gave chase.[3] During the course of a short footrace, the defendant threw a gun aside, and was subsequently caught and arrested.

We start with the proposition that the Fourth Amendment to the United States Constitution does not require suppression of the evidence. In *California* v. *Hodari D.*, 111 S.Ct. 1547 (1991), the United States Supreme Court held, over a vigorous dissent, that a "seizure" of a person within the meaning of the Fourth Amendment does not occur until a subject yields to the application of physical force by a police officer. A police officer's pursuit of a suspect, which the court treated as a "show of authority" (see *Terry* v. *Ohio*, 392 U.S. 1, 19 n.16 [1968]) for purposes of its opinion, does not trigger Fourth Amendment protections. Consequently, any evidence obtained prior to the actual collaring of the suspect is admissible. *Id.* at 1552. See *Michigan* v. *Chesternut*, 486 U.S. 567 (1988) (police in marked cruiser following a man, who fled at the appearance of the police vehicle, did not amount to a seizure because it would not have communicated to a reasonable person that he was not at liberty to ignore police presence). Recognizing this fundamental change in Fourth Amendment analysis (see 3 LaFave, Search and Seizure § 9.2[h], at 86-92 [Supp. 1992]), the defendant asserts that art. 14 of the Massachusetts Declaration of Rights provides greater substantive protection than does the Fourth Amendment. He argues that suppression of the evidence is mandated by a line of cases originating with *Commonwealth* v. *Thibeau*, 384 Mass. 762, 764 (1981), in which the Supreme Judicial Court stated that "[p]ursuit that appears designed to effect a stop is no less intrusive than a stop itself. . . . [A] *stop starts when pursuit begins*" (emphasis supplied). See also *Commonwealth* v. *O'Laughlin*, 25 Mass. App. Ct. 998, 999-1000 (1988); *Commonwealth* v. *Pena*, 31 Mass. App. Ct. 201, 205-207 (1991). The abandoned weapon is the fruit of an illegal search, the argument goes, because

---

[3]The motion judge found that the defendant's flight preceded the officer's pursuit, and the defendant has conceded as much.

Officer Devane had not acquired facts which would justify a stop at the time the defendant commenced his flight.

Whether art. 14 affords more expansive safeguards than those provided under the *California* v. *Hodari D.* formulation has not been addressed directly by a Massachusetts appellate court. Because we affirm the judge's order on other grounds, we need not decide the question in this case.

In our view, the defendant's cause is not advanced by *Commonwealth* v. *Thibeau, supra.* There are significant factual distinctions between the circumstances of the pursuit in the instant case and those described in *Thibeau.* In that case the show of authority sufficient to constitute a seizure (the chase by the police "with siren blaring") began *before* the defendant engaged in any action that could be described as flight. The court stated that Thibeau "fled when pursued." *Id.* at 763. In contrast, here the defendant's decision to run away was not prompted by any inappropriate police action. Because we conclude that Officer Devane permissibly could have detained the defendant for the purpose of conducting a legitimate field inquiry, once the defendant began his flight, we do not have to reach the question whether, after *California* v. *Hodari D., supra,* art. 14 may provide more protection than the Federal Constitution with respect to "seizures" of individuals. See *Commonwealth* v. *Fraser,* 410 Mass. 541, 543 n.3 (1991) (although art. 14 argument was waived, the court stated that it "has never held that the State Constitution affords . . . more (or less) protection with respect to *Terry*-type stops . . . than does the Federal Constitution"); *Commonwealth* v. *Laureano,* 411 Mass. 708, 709 n.1 (1992); *Commonwealth* v. *Pena,* 31 Mass. App. Ct. at 206-207 n.4.[4]

---

[4]Although Massachusetts has apparently adopted, under art. 14, the pre-*Hodari D.* test for determining when a seizure of an individual has occurred — that is, whether "a reasonable person would have believed that he was not free to leave[,]" *Commonwealth* v. *Borges,* 395 Mass. 788, 791 (1985), quoting from *United States* v. *Mendenhall,* 446 U.S. 544, 554 (1980) — no appellate court of the Commonwealth has yet been presented squarely with the opportunity to consider the "bright-line" rule of *Hodari D.* and whether that rule would alter the *Thibeau* decision. See *Commonwealth* v. *Fraser,* 410 Mass. at 543-544 (where the court, in construing the Fourth Amendment, invokes the "reasonable person" standard, yet cites

Nor do we express an opinion as to whether the *Common-wealth* v. *Thibeau, supra,* holding would survive as an independent principle of State constitutional law. Compare *Commonwealth* v. *Upton,* 394 Mass. 363, 373-377 (1985).

The Supreme Judicial Court has recently revisited its decision in *Thibeau.* Writing for the court in *Commonwealth* v. *Laureano,* 411 Mass. at 709-710, Justice Lynch, who wrote *Thibeau,* stated:

> "There we held that the police pursuit, with siren blaring, of a bicyclist required some articulable facts leading to reasonable suspicion prior to the start of pursuit because in those circumstances, the stop (and seizure) began when the pursuit commenced. *The claim of police 'pursuit' by the defendant, however, is not a talismanic formula for converting all police investigation into a stop and seizure* (emphasis supplied). . . . In this case there was no evidence of pursuit in the sense that the term was used in *Thibeau.* The [plainclothes] detectives merely followed the defendant into a public rest room where they both had a right to be."

The defendant does not dispute that his flight may be considered as a factor in evaluating the officer's articulable suspicion, because "the defendant broke away from the police before they pursued him." *Commonwealth* v. *Sanchez,* 403 Mass. 640, 646 (1988). See note 3, *supra.* Contrast *Commonwealth* v. *Thibeau,* 384 Mass. at 764. In *Sanchez,* moreover, the defendant's flight, after he had consented to a police search, provided the officers with enough suspicion to pursue and stop him. *Ibid.*

Although this is a close case, we think that Officer Devane's pursuit of the defendant (and consequently his "stop" for our present purpose) was justified in the circumstances. The judge found that Devane asked the defendant

---

*Hodari D., supra).* For a decision which demonstrates the difficult exercise of determining when a seizure occurs in a similar factual situation, see *People* v. *Mamon,* 435 Mich. 1 (1990).

"to stop for a minute" so that "he could check the doorway to see if there was any attempt at breaking and entering" because "the officer could not see the doorway from where he was standing." Given the background of the earlier breaking and entering, it was not unreasonable — in fact it was good police work[5] — for Officer Devane to approach the group of men, who, from his perspective, may have been serving as lookouts for accomplices involved in further criminal activity. Cf. *Commonwealth* v. *Matthews,* 355 Mass. 378, 381 (1969). The defendant's quick appearance from around the corner, although it "could reasonably have been viewed by . . . another police officer . . . as innocent [behavior]," *Commonwealth* v. *Patti,* 31 Mass. App. Ct. 440, 443 (1991), might reasonably here have added to Officer Devane's suspicion, incorrect as it turned out, that another breaking and entering was in the making. The defendant's immediate and abrupt departure, particularly as it was apparently in direct response to Officer Devane's interest in him, in our view confirmed the officer's suspicion and transformed it into a "reasonable suspicion," which was sufficient to detain the defendant while the crime locus was investigated. Unlike *Commonwealth* v. *Bacon,* 381 Mass. 642, 646 (1980), the defendant's evasive actions here immediately "raise[d] the observing officer's suspicions to the point of causing him then to believe the [defendant] should be stopped." When coupled with the other facts and circumstances, *Commonwealth* v. *Wren,* 391 Mass. 705, 708 n.2 (1984), the pursuit, even though clearly designed to effect a stop, was permissible. Cf. *Commonwealth* v. *Sanchez, supra.*

*Judgments affirmed.*

---

[5]*Commonwealth* v. *Battle,* 365 Mass. 472, 475 (1974), in which the court discussed police officers' duty to follow those who flee upon their approach, appears to support our conclusion. However, that decision was apparently reached solely under the Fourth Amendment.