## COMMONWEALTH vs. KAREEM WILSON.

No. 99-P-2175.

Hampden. May 3, 2001. - August 29, 2001.

Present: LENK, GELINAS, & KAFKER, JJ.

*Constitutional Law,* Search and seizure. *Search and Seizure,* Pursuit. *Evidence,* Flight, Relevancy and materiality, Prior misconduct, Credibility of witness. *Witness,* Credibility. *Controlled Substances. Practice, Criminal,* Instructions to jury.

At the trial of indictments for trafficking in cocaine and possessing marijuana with intent to distribute, arising from a police stop of a motor vehicle for a traffic violation in a high crime area at 3:30 A.M., during which the defendant, a passenger in the vehicle, "suddenly bolted from the car, while holding his chest as if concealing something, . . . while looking around furtively," the judge correctly denied the defendant's motion to suppress cocaine and marijuana evidence, where there was ample evidence to support the trial judge's conclusion that the officers had reasonable suspicion of criminal activity when they began their pursuit of the fleeing defendant. [412-415]

At the trial of indictments for trafficking in cocaine and possessing marijuana with intent to distribute, certain questions asked the defendant by the prosecutor regarding outstanding warrants for his arrest did not create a substantial risk of a miscarriage of justice, where, although the questioning should have stopped before the prosecutor's inquiry regarding narcotics, the verdict would have been the same without the erroneously admitted evidence. [415-418]

At the trial of indictments, including an indictment for trafficking in cocaine, the judge did not err in refusing to instruct the jury on simple cocaine possession, where, although simple possession constituted a lesser included offense of the crime charged, the evidence did not provide a rational basis for acquitting the defendant of the crime charged and convicting him of the lesser included offense. [418-419]

At the trial of indictments for trafficking in cocaine and possessing marijuana with intent to distribute, the judge erred in denying the defendant's motion for a required finding of not guilty on so much of the indictment as charged him with intent to distribute marijuana, where there was no evidence concerning the amount of marijuana found in the defendant's possession, except that it fit in his pants pocket; no expert testimony regarding the practices or accoutrements of distribution of marijuana; no evidence regarding common packaging of marijuana and cocaine; and no evidence that the defendant was arrested in the act of selling either drug. [419-421]

INDICTMENTS found and returned in the Superior Court Department on December 16, 1997.

A pretrial motion to suppress evidence was heard by *Thayer Fremont-Smith*, J., and the cases were tried before *Daniel A. Ford*, J.

*Edward W. Wayland* for the defendant.

*Thomas H. Townsend*, Assistant District Attorney, for the Commonwealth.

KAFKER, J. As the police stopped the vehicle in which he was a passenger for a traffic violation, the defendant, Kareem Wilson, bolted from the car, clutching what was later revealed to be a bag of cocaine. He also had four baggies of marijuana in his pants pocket. He was indicted for (1) trafficking in cocaine of 200 or more grams; (2) committing a drug violation in a school zone; and (3) possessing marijuana with intent to distribute. A jury returned convictions on all three counts.

His appeal is fourfold. He argues that the judge committed error in (1) denying his motion to suppress the cocaine and marijuana evidence; (2) allowing at trial questions by the prosecutor regarding outstanding arrest warrants; (3) refusing to instruct the jury on simple cocaine possession; and (4) denying his motion for a required finding of not guilty on the charge of possessing marijuana with the intent to distribute. We affirm the convictions for trafficking in cocaine and committing a drug violation in a school zone and reverse the judge's decision denying the defendant's motion for a required finding of not guilty on so much of the marijuana indictment as charged him with the intent to distribute. We discuss each claim of error in turn, reciting facts necessary to resolve the issue raised.

1. *Motion to suppress.* The judge's findings of fact on the motion to suppress may be summarized as follows. At about 3:30 A.M. Springfield police officers Elliot and Duda observed a car drive past them at an excessive rate of speed. The officers pursued the car, turning on their emergency lights. The vehicle rolled through a stop sign and stopped in the middle of an intersection in a high crime area. The driver and passenger side doors opened and the defendant, a passenger in the car, got out of the vehicle, looked to his right and to his left, and fled across

the street while clutching his chest as if holding something in his shirt. The driver shut his door and sped away in the car.

Officer Elliot left the cruiser and chased the defendant on foot, yelling at him to stop and show his hands. He observed the fleeing defendant toss a plastic bag onto the roof of a two-story building. The defendant was thereafter apprehended and arrested. An on-site search of the defendant by back up officers produced four baggies of marijuana from his pants pocket and a beeper. Officer Elliot retrieved the plastic bag from the roof top. The bag was eventually found to contain 244.41 grams of cocaine.

The defendant does not contest the validity of the vehicle stop, or the right of the police to conduct a threshold inquiry of the driver. See *Commonwealth* v. *Torres*, 424 Mass. 153, 157 (1997); *Commonwealth* v. *Prevost*, 44 Mass. App. Ct. 398, 400 (1998). He does argue, however, that the police lacked reasonable suspicion when they seized him.

Pursuant to Article 14 of the Declaration of Rights of the Massachusetts Constitution, a person is seized "when a police officer initiates a pursuit with the obvious intent of requiring the person to submit to questioning." *Commonwealth* v. *Stoute*, 422 Mass. 782, 783 (1996). A pursuit of a vehicle for a traffic violation does not constitute, without more, pursuit of a passenger for these purposes. See generally *Commonwealth* v. *Torres*, 424 Mass. at 157 ("in the absence of his own individual misbehavior or suspicious conduct, [defendant passenger] could expect that the formalities involved in the traffic stop would take place solely between the driver and the trooper"). Moreover, as the motion judge correctly found, "No inquiry of defendant by the police or pursuit of him personally was attempted" before he fled. We conclude that the pursuit of the defendant began when the officer left the patrol car to chase him.

As reasonable suspicion of criminal activity was required when that pursuit began, *Stoute*, 422 Mass. at 789 (1996), we review the facts as they existed at that point to determine whether they provided the officers with reasonable suspicion.

The following facts were known by the police officers: (1) they were in a high crime area (2) at 3:30 A.M.; (3) a speeding car which they had stopped halted in the middle of the intersec-

tion and the driver and passenger side doors both opened; (4) the defendant, a passenger, "suddenly bolted from the car, [5] while holding his chest as if concealing something, . . . [6] while looking around furtively." We conclude that there was ample evidence to support the trial judge's conclusion that the officers had reasonable suspicion of criminal activity when they began their pursuit of the defendant.

Each of the six factors above has been considered relevant in establishing reasonable suspicion. A "high crime area" has been described as a "relevant contextual consideration." *Commonwealth* v. *Riche*, 50 Mass. App. Ct. 830, 834 (2001), quoting from *Illinois* v. *Wardlow*, 528 U.S. 119, 124 (2000). The time of night is also a factor. See *Commonwealth* v. *Thompson*, 427 Mass. 729, 734 (1998). As to the third, fourth, and fifth factors, see *Commonwealth* v. *Torres*, 433 Mass. 669, 674 (2001) (when automobile "suddenly" pulled over, the four doors flew open and one of the passengers fled with a backpack, "events suggested that the fleeing passenger may have had illicit goods"); *Commonwealth* v. *Santiago*, 30 Mass. App. Ct. 207, 210 (1991) (weapons search was authorized when an erratically driven car stopped, both front doors swung open, and the driver and passenger jumped abruptly from it).[1] "Uncommon movements," and furtive gestures[2] also have been found relevant, as has flight.[3] "The conjunction of these factors" in this case created reasonable suspicion. See *Riche*, 50 Mass. App. Ct. at 834.

The defendant relies on *Commonwealth* v. *Thibeau*, 384 Mass. 762 (1981), to argue that his flight cannot be considered because

---

[1]See also *Commonwealth* v. *Sweezey*, 50 Mass. App. Ct. 48, 52 (2001) ("defendant's abrupt attempt to evade the officers while they were approaching and after they identified themselves as police, properly may be viewed as elevating . . . officer's reasonable suspicion . . . to the level of probable cause"); *Commonwealth* v. *Riche*, 50 Mass. App. Ct. 830, 833 (2001).

[2]See *Commonwealth* v. *Heughan*, 40 Mass. App. Ct. 102, 104 (1998) (bending movement of rear-seat passenger as police pulled car over); *Commonwealth* v. *Prevost*, 44 Mass. App. Ct. 398, 401 (1998) (car passenger "ben[t] over to the point where he was briefly out of sight"); *Commonwealth* v. *Robles*, 48 Mass. App. Ct. 490, 492-493 (2000) (passenger leaning forward and reaching between his legs). *Commonwealth* v. *Rivera*, 27 Mass. App. Ct. 41, 42-43 (1989) (defendant plunges plastic bag down pants).

[3]See *Commonwealth* v. *Sanchez*, 403 Mass. 640, 645-646 (1988); *Commonwealth* v. *Marrero*, 33 Mass. App. Ct. 440, 444 (1992).

"flight in reaction to a show of police authority may not be considered to justify a subsequent stop." The defendant's reliance is misplaced. In *Thibeau*, pursuit of the defendant, based only on a hunch, preceded the flight and therefore "flight from the officer's pursuit [could not] be considered for [the] . . . purpose" of determining reasonable suspicion. See *Commonwealth* v. *Thibeau*, 384 Mass. at 764. See also *Commonwealth* v. *Harkess*, 35 Mass. App. Ct. 626, 630 (1993) (not to be counted [in determining reasonable suspicion in *Thibeau*] was an individual's attempt to elude the police after they initiated pursuit based only on a hunch"). *Thibeau*, however, has been distinguished, and flight has been considered a relevant factor, where it has not been triggered by an inappropriate police action. See *Commonwealth* v. *Sanchez*, 403 Mass. 640, 645-646 (1988) ("Here [unlike in *Thibeau*], the defendant broke away before they pursued him, thus providing the police with a reasonable and articulable suspicion"); *Commonwealth* v. *Marrero*, 33 Mass. App. Ct. 440, 443 (1992) (flight "not prompted by any inappropriate police action" considered as a factor in establishing reasonable suspicion). See also *Commonwealth* v. *Sweezey*, 50 Mass. App. Ct. at 52 ("once the circumstances establish suspicion sufficient to justify a stop, the subsequent flight of a defendant may contribute to the objective indicia of criminality"). In the instant case, the defendant's flight was not preceded by any "inappropriate police action," *Commonwealth* v. *Marrero*, 33 Mass. App. Ct. at 443, and it occurred, as the motion judge concluded, before any "inquiry of the defendant . . . or pursuit of him personally was attempted." The flight could therefore be considered in determining whether reasonable suspicion existed when the police began to chase the defendant.

2. *Issues arising at trial.* As a second ground for appeal, the defendant contends that certain questions the prosecutor asked him regarding outstanding warrants for his arrest created a substantial risk of a miscarriage of justice, particularly in light of the Commonwealth's representation that there would be no attempt to impeach the defendant by use of prior convictions

and prior bad acts.[4] On direct examination, the defendant was asked by his own counsel to explain why he fled. The defendant stated that he fled because he was frightened and there was an outstanding arrest warrant for him resulting from his failure to complete a drug program. The Commonwealth thereafter cross-examined the defendant on the subject of his arrest warrants; the questions tested his veracity and revealed that, at the time of the stop, there were a number of outstanding warrants for multiple offenses.[5] At sidebar, after a late objection, the prosecu-

---

[4]The morning of the first day of trial the judge considered the defendant's motion in limine to prohibit impeachment by prior convictions. The judge asked the Commonwealth if "you have any" and the prosecutor said, "I don't believe there are any." The court ruled, "Based upon that representation, I'll take no action on the motion." There followed a discussion on a motion to exclude testimony on prior bad acts. The judge asked the prosecutor if he had "any such evidence." When he responded "no," that motion was allowed.

[5]The questioning ran as follows:

*Q.* Did you have any – or do you know, was there more than one warrant?

*A.* Not that I recall.

*Q.* So, you think that there was only one warrant?

*A.* I'm not sure.

*Q.* Could there have been more than one?

*A.* Maybe.

*Q.* Could it be that there were more than two?

*A.* Probably for the same case.

*Q.* Could there have been seven?

*A.* Yes, I have a couple of traffic violations from a while ago, citations like.

*Q.* Any other possible warrants?

*A.* Not that I recall offhand.

*Q.* Well, you had the probation situation?

*A.* Yes.

*Q.* You had some motor vehicle citations?

*A.* Mm-hmm.

*Q.* Anything else?

tor stated that his questions went to the defendant's credibility, and offered to go on to another line of inquiry; the judge responded, "I think that the probative value is outweighed by the prejudice, so I'm going to ask you to go on to a different area." No curative instruction was requested or given.

"Evidence of prior bad acts is not admissible to show that the defendant has a criminal propensity or is of bad character. . . . Such evidence, if relevant, may be admitted, however, if it is offered for a purpose other than impugning the defendant's character, and if its probative value is not substantially outweighed by any prejudice." *Commonwealth* v. *Otsuki*, 411 Mass. 218, 236 (1991) (citation omitted). See *Commonwealth* v. *Gollman*, 51 Mass. App. Ct. 839, 843 (2001). One legitimate purpose for such evidence is to impeach the credibility of a defendant who may be lying or giving incomplete answers on direct examination. See *Commonwealth* v. *Varney*, 391 Mass. 34, 44 (1984) (prosecutor's statement that defendant's sales of narcotics provided him a source of income was appropriate even in face of prior agreement not to refer to the defendant as a drug dealer, when the defendant portrayed

---

*A.* I think I may have had an assault and battery case.

*Q.* Anything else?

*A.* I can't recall if there is.

*Q.* Could there have been other cases?

*A.* Maybe.

*Q.* How many?

*A.* I'm not sure, sir.

*Q.* More than one?

*A.* Yes.

*Q.* Did any of them involve narcotics?

*A.* Yes.

*Q.* How many?

*A.* One other.

*Q.* What was that?

At that point, the defense objected.

himself as a "legitimate businessman who had nothing to do with narcotics"); *Commonwealth* v. *Roderick*, 429 Mass. 271, 274 (1999) (because "defendant answered untruthfully that he had never carried a gun, he opened the door to admission of the evidence of his prior[] conviction for gun possession").

We begin by recognizing that, despite the pretrial rulings, the Commonwealth was entitled to some leeway once the defense opened the door on the subject of the outstanding warrant. See *Roderick*, 429 Mass. at 274; *Commonwealth* v. *Key*, 381 Mass. 19, 28-29 (1980). We conclude, however, that the questioning should have stopped before the inquiry regarding narcotics, where the similarity of the prior bad act to the crime for which he was on trial made this exchange more prejudicial than probative. Cf. *Commonwealth* v. *Whitman*, 416 Mass. 90, 94 (1993); *Commonwealth* v. *Roucoulet*, 22 Mass. App. Ct. 603, 608 (1986).

In order for us to conclude that a substantial risk of a miscarriage of justice exists, the error must be sufficient to make plausible an inference that the result might have been otherwise but for the error. See *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999), citing *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 21 (1986). In considering the strength of the Commonwealth's case against the defendant, we are persuaded that the verdict would have been the same without the erroneously admitted evidence.[6] See *Otsuki*, 411 Mass. at 236-237 ("[e]ven assuming . . . that the testimony prejudiced the defendant," no substantial miscarriage of justice when the Commonwealth's case was "very strong").

As his third claim of error, the defendant alleges that the judge's refusal to instruct the jury on simple cocaine possession constituted an error requiring reversal of his conviction. "As a general rule, the jury should receive an instruction on a particular offense where (1) the offense is, as a matter of law, a lesser included offense of the crime charged; and (2) the

---

[6]Our conclusion is based on the ample evidence in the record supporting the cocaine trafficking conviction. We note here that we are reversing the denial of the motion for a required finding on so much of the indictment charging the defendant with intent to distribute marijuana. See *infra* at 419-421. We therefore need not consider the impact of the prior bad act testimony on the marijuana conviction.

evidence provides a rational basis for acquitting the defendant of the crime charged and convicting him of the lesser included offense." *Commonwealth* v. *Souza*, 428 Mass. 478, 493-494 (1998) (quotations omitted). The defendant correctly points out that simple possession is a lesser included offense of trafficking. See *Commonwealth* v. *Caterino*, 31 Mass. App. Ct. 685, 686 n.2 (1991). However, his argument founders on the second prong of the rule. As the defendant acknowledges, in order to be entitled to the instruction he sought, he must place the distribution element of the trafficking charge in dispute.

The package the defendant threw onto the rooftop while fleeing the police contained 244.41 grams of 23.34 percent pure cocaine, with a street value of approximately $25,000. "Possession of a large quantity of an illicit narcotic raises an inference of intent to distribute." *Commonwealth* v. *Sendele*, 18 Mass. App. Ct. 755, 758 (1984). The defendant did not argue that he possessed the cocaine but lacked the intent to distribute; his theory, rather, was that his possession of the cocaine was *unknowing*, as someone else in the automobile had slipped the cocaine into his jacket. As the defendant cannot change his theory of the case on appeal, see *Commonwealth* v. *James*, 424 Mass. 770, 789 n.31 (1997), he cannot now claim to have asserted simple possession. In any event, given the quantity of cocaine in question, which an expert at trial testified was "not at all" consistent with personal use, the judge was warranted in refusing to give a simple possession charge to the jury. Cf. *Souza*, 428 Mass. at 494.

Finally, the defendant argues that his motion for required finding on the charge of possession of marijuana with intent to distribute should have been allowed. We are confronted with a case in which a defendant possessed a large quantity of cocaine and a small, undetermined amount of marijuana. The only expert testimony at trial regarding distribution related to the cocaine. On appeal, the Commonwealth cites five factors it contends are sufficient to support a finding of intent to distribute the marijuana. The first, the defendant's flight, is weak because, as the Commonwealth acknowledges, "flight is more satisfactorily explained by the quarter kilo of cocaine." The second, his possession of a beeper, has been held to have some relevance,

depending on the context. See *Commonwealth* v. *Sinforoso*, 434 Mass. 320, 329 (2001). The third factor, a lack of smoking paraphernalia, should be considered in the context of uncontested testimony of the defendant that he and his associates were smoking marijuana all evening in the car that pulled away when he fled. As for the fourth, packaging, the Commonwealth presented no testimony whatsoever regarding the packaging of the marijuana found on the defendant except to say it was in four baggies. The Commonwealth therefore relies on the presence of the cocaine as its "strongest" factor.

The inferential value of the cocaine on the question of the defendant's intent to distribute the marijuana is, however, dependent on the particular facts surrounding the case. Compare *Commonwealth* v. *Ellis*, 356 Mass. 574, 579 (1970) ("the intent to sell heroin inferred from the possession of large quantities of that drug cannot also be used to sustain a finding that the defendant has been shown beyond a reasonable doubt to have intended to sell the [six] Methadon tablets," located elsewhere in the house in a bottle with a prescription label on it), with *Commonwealth* v. *Burke*, 44 Mass. App. Ct. 76, 80 (1998) ("the inference that the defendant intended to distribute the heroin was warranted by the evidence that he had three different drugs in his possession, that he was in possession of heroin packaged in a form more consistent with sale than with personal use, and that at the time of possessing the heroin he was engaged in a sale of another drug"), and *Commonwealth* v. *Rivera*, 44 Mass. App. Ct. 452, (1998) ("the defendant's conduct vis-à-vis the marijuana [was] highly probative of his intent regarding the cocaine: [where] (1) the cocaine had been stored (and secreted) alongside the marijuana that the defendant had been seen vending; (2) the cocaine was packaged in the same manner as the marijuana; (3) the defendant had the cocaine in his actual possession and (4) he was . . . actively engaged in selling drugs").

Here we have no evidence concerning the amount of marijuana found on the defendant except that it fit in his pants pocket, no expert testimony regarding the practices or accoutrements of distribution of marijuana, and no evidence regarding common packaging of the marijuana and cocaine. Further, the defendant was not arrested in the act of selling either drug. In

these circumstances, we conclude there was insufficient evidence for the jury to conclude beyond a reasonable doubt that the defendant intended to distribute the marijuana as well as the cocaine. The defendant's motion for a required finding of not guilty on so much of the indictment as charged him with intent to distribute marijuana should have been allowed.

So much of the judgment on indictment no. 97-2916 (possession of marijuana with the intent to distribute) as charges intent to distribute is reversed, the verdict is set aside, and judgment shall enter for the defendant. The remaining judgments are affirmed.

*So ordered.*